**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| TRAVELERS PERSONAL INSURANCE COMPANY, as subrogee of Thomas Berry, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ELECTROLUX CONSUMER PRODUCTS, INC., ELECTROLUX NORTH AMERICA, INC., and CURTIS INTERNATIONAL, LTD, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

COMES NOW the Plaintiff, Travelers Personal Insurance Company, as subrogee of Thomas Berry, by and through undersigned counsel, pursuant to the Federal Rules of Civil Procedure, and for its complaint against Defendants Electrolux Consumer Products, Inc., Electrolux North America, Inc., and Curtis International, LTD, alleges and says as follows:

**PARTIES**

1. Plaintiff, Travelers Personal Insurance Company ("Travelers") is an insurance company organized and operating pursuant to the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Travelers provided insurance coverage to Thomas Berry ("Berry") against losses arising from certain hazards to his real and personal property. This insurance covered property owned by Berry located at 1033 Elsmore Drive, Matthews, North Carolina (the "Property"). This insurance was provided and issued under Travelers policy number 0B8912-614333919-633-1.

2. Defendant Electrolux Consumer Products, Inc. ("Electrolux CP") is a corporation organized and operating pursuant to the laws of the State of Delaware with its principal place of business in Charlotte, North Carolina. According to the Delaware Secretary of State, Electrolux CP's Registered Agent for service of process is The Corporation Trust Company located at 109 Orange Street, Wilmington, Delaware 19801.

3. Electrolux CP is engaged in the business of designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce consumer appliances, including Frigidaire-branded mini-refrigerators, including the subject 6-Can Mini Retro Beverage Fridge.

4. Defendant Electrolux North America, Inc. ("Electrolux NA") is believed to be a subsidiary of the Electrolux Group of companies, is a corporation organized and operating pursuant to the laws of the State of Ohio, with its principal place of business located in Charlotte, North Carolina. According to the Ohio Secretary of State, Electrolux NA's Registered Agent for service of process is CT-Corporation located at 4400 Eastern Common Way, Suite 125, Columbus, Ohio 43219.

5. Electrolux NA is engaged in the business of designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce consumer appliances, including Frigidaire-branded mini-refrigerators, including the subject 6-Can Mini Retro Beverage Fridge.

6. Electrolux CP and Electrolux NA are collectively referred to herein as "Electrolux."

7. Defendant Curtis International, Ltd. ("Curtis") is a corporation organized and existing under the laws of Canada, with its principal place of business located at 7045 Beckett Drive #15, Mississauga, ON L5S 2A4, Canada.

8. Curtis is engaged in the business of designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce consumer appliances, including Frigidaire-branded mini-refrigerators, including the subject 6-Can Mini Retro Beverage Fridge. Upon information and belief, Curtis introduced the product into United States commerce with expectation it would be sold nationwide, including North Carolina.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different States and a foreign state. Plaintiff is a citizen of Connecticut; Electrolux are citizens of Delaware, Ohio, and North Carolina; Curtis is a citizen of Canada.

10. This Court has personal jurisdiction over Electrolux because Electrolux purposefully availed itself of the privilege of conducting business in North Carolina by designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce Frigidaire-branded Mini-Fridges into the stream of commerce with the expectation and intent that they would be sold nationwide, including in North Carolina. The subject Mini-Fridge was in fact sold and used in North Carolina, and Plaintiff's claims arise directly out of and relate to Electrolux's contacts with North Carolina.

11. This Court has specific personal jurisdiction over Curtis because, upon information and belief, Curtis designed, manufactured, assembled, specified, approved, authorized, tested, inspected, quality-assured, marketed, imported, licensed, distributed, and/or placed into the stream of commerce for distribution throughout the United States, including through national retail channels

with the expectation and intent that Frigidaire-branded Mini-Fridges would be sold in states including North Carolina. The subject Mini-Fridge was in fact sold and used in North Carolina, and Plaintiff's claims arise directly out of and relate to Curtis's conduct in placing the Product into the stream of commerce.

12. The exercise of personal jurisdiction over all Defendants in this forum comports with traditional notions of fair play and substantial justice.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district, including the sale and use of the subject Mini-Fridge and the fire and resulting damages.

## FACTUAL ALLEGATIONS

14. Upon information and belief, at all times material hereto, Electrolux CP and Electrolux NA were engaged in the business of designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce Frigidaire-branded Mini Fridges, including the 6-Can Retro Mini Fridge at issue in this action.

15. Upon information and belief, Electrolux CP and Electrolux NA owned the Frigidaire trademark and licensed its use for Mini-Fridges, retained control over design, manufacture, branding, warnings, safety standards, specifications, components and/or quality requirements, and participated in or had knowledge of safety issues associated with the Mini-Fridge.

16. Upon information and belief, at all times material hereto, Curtis designed, manufactured, assembled, specified, approved, authorized, tested, inspected, quality-assured,

marketed, imported, licensed, distributed, and/or placed into the stream of commerce Frigidaire-branded Mini Fridges, including the 6-Can Retro Mini Fridge at issue in this action.

17. Upon information and belief, at all times material hereto, Curtis was responsible for designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce the Mini-Fridge, which was manufactured overseas and introduced into the stream of commerce in the United States.

18. Defendants knew or reasonably should have known that Mini-Fridges of the type at issue would be used in residential homes, workplaces, offices, and commercial environments and would foreseeably affect the residents, property and interests at those locations.

19. On or about November 23, 2023, Berry purchased a Frigidaire 6-Can Mini Retro Beverage Fridge (the "Mini-Fridge").

20. At all times material hereto, the Mini-Fridge was used in Berry's home in a normal, ordinary, foreseeable and intended manner.

21. At all times material hereto, the Mini-Fridge was not modified, changed, altered or abused by any users prior to or during its use.

22. On or about June 16, 2024, a fire originated at the Mini-Fridge and spread through the property.

23. Post-fire analysis revealed that the fire originated at the Mini-Fridge was caused by an internal electrical failure, resulting in a short circuit that ignited the surrounding plastic housing, and spread to nearby combustible materials.

24. On or about July 24, 2025, Curtis instituted a recall of Frigidaire 6-Can Retro Mini Fridges due to internal electrical components that can short circuit and ignite the surrounding

plastic housing, posing fire hazards. On January 15, 2026, Curtis further expanded the subject recall.

25. As a direct and proximate result of the defects and/or malfunction of the subject Mini-Fridge, Berry incurred damage to his Property, which damages were reimbursed by Travelers in the amount of $909,456.23.

26. By virtue of its payments, Travelers is subrogated to Berry's right of recovery against any third parties, including Electrolux and Curtis, for damages arising out the aforementioned incident.

27. The incident and consequent damages were directly and proximately caused by Defendants, as is further and more fully described below.

**COUNT I – NEGLIGENCE**
***Electrolux***

28. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 2 through 27 as if fully restated herein.

29. At all relevant times, Electrolux owned a duty to Berry and other foreseeable users to exercise reasonable care in the designing, manufacturing, assembling, specifying, approving, authorizing, testing, inspecting, quality-assuring, marketing, importing, licensing, distributing, and/or placing into the stream of commerce of the subject Mini-Fridge.

30. Electrolux further owed a duty to design, manufacture, assemble, specify, approve, authorize, test, inspect, quality-assure, market, import, license, distribute, and/or place into the stream of commerce the Mini-Fridge so that it was reasonably safe for its intended and foreseeable uses and to avoid subjecting users and their property to unreasonable risks of fire hazards.

31. Electrolux breached its duties of reasonable care in one or more of the following respects:

a. Negligently designing the Mini-Fridge in a manner that created an unreasonable risk of fire, including but not limited to inadequate electrical architecture, electrical wiring and connections, improper component layout, insufficient insulation or spacing, and/or failure to incorporate protective features to prevent ignition upon electrical failure;

b. Negligently manufacturing the Mini-Fridge, including defects in materials, workmanship, assembly, and/or electrical components, such that the Mini-Fridge deviated from intended specifications and was unsafe for ordinary and foreseeable use;

c. Negligently specifying, sourcing, selecting, or approving electrical components, wiring, insulation, and housing materials that were unsafe, unsuitable, or prone to short circuiting, overheating, or ignition during ordinary use;

d. Failing to adequately test, inspect, and quality-control the Mini-Fridge and its electrical systems so as to identify and eliminate dangerous conditions prior to distribution;

e. Failing to implement adequate quality assurance and safety protocols to prevent defective units from entering the stream of commerce;

f. Failing to incorporate feasible alternative designs or safety features that would have reduced or prevented the risk of internal electrical failures and fire;

g. Failing to provide adequate warnings and instructions regarding known or reasonably foreseeable risks of internal electrical failure, short circuiting, and ignition of the plastic housing;

h. Negligently outsourcing the design, manufacture, assembly, and/or component sourcing of the Mini-Fridge to third parties without exercising reasonable care to ensure that such entities were competent and that the Mini-Fridge would be safely designed and constructed;

i. Failing to adequately supervise, monitor, audit, or control third-party designers, manufacturers, assemblers, and component suppliers to ensure compliance with reasonable safety standards, specifications, and quality requirements;

j. Failing to enforce or implement adequate safety protocols, inspections, and quality controls in connection with overseas or third-party manufacturing operations;

k. Negligently relying on third-party entities for safety-critical functions while retaining the ability to control, influence, or prevent the unsafe condition of the Mini-Fridge;

l. Failing to timely investigate, respond to, and correct known or reasonably knowable safety risks associated with the Mini-Fridge after it entered the marketplace, including failing to timely warn consumers or remove dangerous products from circulation;

m. Failing to comply with applicable safety standards, industry practices, and consumer product safety requirements governing electrical integrity and fire prevention in consumer refrigeration appliances;

n. Negligently marketing and placing the Mini-Fridge into the stream of commerce despite knowing or having reason to know that it posed an unreasonable risk of fire and property damage;

o. Introducing into commerce a Mini-Fridge that malfunctioned in a manner that would not ordinarily occur in the absence of negligence or defect.

p. Negligently selecting or approving unsafe electrical components and materials;

q. Negligently outsourcing manufacturing or component sourcing without adequate oversight;

r. Failing to supervise or audit third-party manufacturers and suppliers;

s. Failing to monitor product performance, responding to safety incidents, coordinating recalls, and implementing corrective actions when hazards became known or reasonably knowable; and

t. Otherwise failing to use due care in ways that may be disclosed in discovery

32. As a direct and proximate result of Electrolux's negligent acts and omissions, the Mini-Fridge malfunctioned and ignited, causing the fire and resulting damages described herein.

33. The fire and resulting damages were a foreseeable consequence of Electrolux's failure to exercise reasonable care in connection with the design, manufacture, testing, inspection, warning, outsourcing, licensing, supervision, and distribution of the Mini-Fridge.

34. Berry suffered the damage described herein as a direct and proximate result of Electrolux's negligence.

35. Plaintiff, as subrogee, is entitled to recover all sums paid in connection with the losses caused by Electrolux's negligent conduct.

**COUNT II – FAILURE TO WARN**
***Electrolux***

36. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 2 through 27 as if fully restated herein.

37. Electrolux owed a duty to provide reasonable and adequate warnings and instructions regarding known or reasonably foreseeable risks associated with the Mini-Fridge, including the risk that internal electrical components could short circuit and ignite the surrounding plastic housing, causing fire hazards.

38. Electrolux knew or reasonably should have known that the Mini-Fridge posed a significant fire risk due to internal electrical component failures, including the risk of short circuiting and ignition of the plastic housing during ordinary and foreseeable use.

39. The warnings and instructions accompanying the Mini-Fridge were inadequate in that they failed to reasonably communicate the nature, severity, and scope of the fire hazards associated with internal electrical failures.

40. The warnings failed to provide sufficient guidance regarding precautions necessary to reduce or avoid the risk of fire, including monitoring, placement, continued use, or discontinuation of the Mini-Fridge under hazardous conditions.

41. Adequate warnings and instructions were feasible and could have been provided at the time the Mini-Fridge was placed into the stream of commerce.

42. Had adequate warnings been provided, Berry would have taken reasonable steps to avoid or mitigate the risk of fire, and the loss would not have occurred or would have been substantially reduced.

43. Electrolux's failure to provide adequate warnings and instructions rendered the Mini-Fridge defective and unreasonably dangerous.

44. Electrolux's failure to warn was a direct and proximate cause of the fire and the damages sustained by Berry, which damages were reimbursed by Plaintiff.

45. As a result of Electrolux's failure to warn, Plaintiff is entitled to recover damages as permitted by law.

## COUNT III – BREACH OF WARRANTY
***Electrolux***

46. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 2 through 27 as if fully restated herein.

47. At all relevant times, Electrolux were merchants with respect to goods of the kind sold, including consumer refrigeration appliances such as the subject Mini-Fridge.

48. Electrolux impliedly warranted that the Mini-Fridge was merchantable and fit for the ordinary purposes for which such goods are used, including safe operation as a consumer refrigeration appliance without posing an unreasonable risk of fire or property damage.

49. The Mini-Fridge breached the implied warranty of merchantability because it was not fit for its ordinary purpose, was not of fair average quality, was not adequately contained, packaged, or labeled, and was unsafe for ordinary and foreseeable use due to defects in its design, manufacture, electrical components, and/or warnings.

50. The Mini-Fridge failed to perform as an ordinary consumer would reasonably expect when used in a reasonably foreseeable manner.

51. The defective and unmerchantable condition of the Mini-Fridge existed at the time it left Electrolux's possession and/or control.

52. Berry used the Mini-Fridge in a normal, intended, and foreseeable manner.

53. As a direct and proximate result of Electrolux's breach of the implied warranty of merchantability, Berry sustained the damages described herein.

54. At the time of sale and distribution, Electrolux knew or had reason to know the particular purposes for which the Mini-Fridge was required, including use in a commercial office environment.

55. Electrolux knew or had reason to know that Berry was relying on Electrolux's skill and judgment to select and furnish a Mini-Fridge suitable and safe for that purpose.

56. The Mini-Fridge was not fit for the particular purpose for which it was required because it posed a risk of internal electrical failure and fire under normal and foreseeable use.

57. As a direct and proximate result of Electrolux's breach of the implied warranty of fitness for a particular purpose, Berry sustained the damages described herein, which damages were reimbursed by Plaintiff

58. Electrolux made express warranties to Berry and to the consuming public through branding, labeling, advertising, product literature, packaging, instructions, and other representations regarding the quality, safety, and fitness of the Mini-Fridge.

59. Such express warranties included, but were not limited to, representations that the Mini-Fridge was safe, reliable, suitable for ordinary and foreseeable use, and compliant with applicable safety standards.

60. These representations formed part of the basis of the bargain and were relied upon by Berry in purchasing and using the Mini-Fridge.

61. The Mini-Fridge failed to conform to those express warranties because it was defective and unreasonably dangerous and posed a fire hazard due to internal electrical failures.

62. As a direct and proximate result of Electrolux's breach of express warranties, Berry sustained the damages described herein.

63. Electrolux received timely notice of the breach of warranties through, among other things, the occurrence of the fire, Plaintiff's claims, and recall-related safety actions and communications concerning Frigidaire-branded Mini-Fridges.

64. Plaintiff pleads in the alternative that privity of contract existed between Electrolux and Berry by virtue of the sale and distribution of the Mini-Fridge through authorized retail channels, and/or that privity is not required under North Carolina law for Berry to maintain claims for breach of warranty against Electrolux, including for property damage arising from a defective product.

65. Plaintiff further pleads in the alternative that Berry was an intended third-party beneficiary of the warranties made by Defendants concerning the Mini-Fridge. At the time the Mini-Fridge was designed, manufactured, distributed, and sold, Defendants knew or reasonably should have known that such products would be purchased for use in homes, offices, and workplaces and would be used by or affect persons and property other than the immediate purchaser. Defendants intended and expected that the benefits of their warranties regarding the safety, quality, and fitness of the Mini-Fridge would extend to foreseeable users and entities whose property could be affected by the product, including Plaintiffs' subrogors.

66. As a direct and proximate result of Electrolux's breaches of warranty, Plaintiff is entitled to recover all damages permitted by law, including property damage, business interruption losses, mitigation costs, and other consequential and incidental damages.

## COUNT IV – NEGLIGENCE
***Curtis***

67. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 2 through 27 as if fully restated herein.

68. At all relevant times, Curtis owed a duty to Berry and foreseeable users to exercise reasonable care in the design, manufacture, assemble, specify, approve, authorize, test, inspect, quality-assure market, import, license, distribute, and/or place into the stream of commerce of the Mini-Fridge.

69. Curtis breached its duties of reasonable care in one or more of the following respects:

a. Negligently designing the Mini-Fridge in a manner that created an unreasonable risk of fire, including but not limited to inadequate electrical architecture, electrical wiring and connections, improper component layout, insufficient insulation or spacing, and/or failure to incorporate protective features to prevent ignition upon electrical failure;

b. Negligently manufacturing the Mini-Fridge, including defects in materials, workmanship, assembly, and/or electrical components, such that the Mini-Fridge deviated from intended specifications and was unsafe for ordinary and foreseeable use;

c. Negligently specifying, sourcing, selecting, or approving electrical components, wiring, insulation, and housing materials that were unsafe, unsuitable, or prone to short circuiting, overheating, or ignition during ordinary use;

d. Failing to adequately test, inspect, and quality-control the Mini-Fridge and its electrical systems so as to identify and eliminate dangerous conditions prior to distribution;

e. Failing to implement adequate quality assurance and safety protocols to prevent defective units from entering the stream of commerce;

f. Failing to incorporate feasible alternative designs or safety features that would have reduced or prevented the risk of internal electrical failures and fire;

g. Failing to provide adequate warnings and instructions regarding known or reasonably foreseeable risks of internal electrical failure, short circuiting, and ignition of the plastic housing;

h. Negligently outsourcing the design, manufacture, assembly, and/or component sourcing of the Mini-Fridge to third parties without exercising reasonable care to ensure that such entities were competent and that the Product would be safely designed and constructed;

i. Failing to adequately supervise, monitor, audit, or control third-party designers, manufacturers, assemblers, and component suppliers to ensure compliance with reasonable safety standards, specifications, and quality requirements;

j. Failing to enforce or implement adequate safety protocols, inspections, and quality controls in connection with overseas or third-party manufacturing operations;

k. Negligently relying on third-party entities for safety-critical functions while retaining the ability to control, influence, or prevent the unsafe condition of the Product;

l. Failing to timely investigate, respond to, and correct known or reasonably knowable safety risks associated with the Mini-Fridge after it entered the marketplace, including failing to timely warn consumers or remove dangerous products from circulation;

m. Failing to comply with applicable safety standards, industry practices, and consumer product safety requirements governing electrical integrity and fire prevention in consumer refrigeration appliances;

n. Negligently marketing and placing the Mini-Fridge into the stream of commerce despite knowing or having reason to know that it posed an unreasonable risk of fire and property damage;

o. Introducing into commerce a Mini-Fridge that malfunctioned in a manner that would not ordinarily occur in the absence of negligence or defect;

p. Negligently selecting or approving unsafe electrical components and materials;

q. Negligently outsourcing manufacturing or component sourcing without adequate oversight;

r. Failing to supervise or audit third-party manufacturers and suppliers;

s. Failing to monitor product performance, responding to safety incidents, coordinating recalls, and implementing corrective actions when hazards became known or reasonably knowable; and

t. Otherwise failing to use due care in ways that may be disclosed in discovery

70. As a direct and proximate result of Curtis' negligent acts and omissions, the Mini-Fridge malfunctioned and ignited, causing the fire and resulting damages described herein.

71. The fire and resulting damages were a foreseeable consequence of Curtis' failure to exercise reasonable care in connection with the design, manufacture, testing, inspection, warning, outsourcing, supervision, and distribution of the Mini-Fridge.

72. Berry suffered the damage described herein as a direct and proximate result of Curtis' negligence.

73. Plaintiff, as subrogee, is entitled to recover all sums paid in connection with the losses caused by Curtis' negligence conduct.

## <u>COUNT V – FAILURE TO WARN</u>

***Curtis***

74. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 2 through 27 as if fully restated herein.

75. Curtis owed a duty to provide reasonable and adequate warnings and instructions regarding known or reasonably foreseeable risks associated with the Mini-Fridge, including the risk that internal electrical components could short circuit and ignite the surrounding plastic housing, causing fire hazards.

76. Curtis knew or reasonably should have known that the Mini-Fridge posed a significant fire hazard due to internal electrical component failures during ordinary and foreseeable use.

77. The warnings and instructions accompanying the Mini-Fridge were inadequate because they failed to reasonably communicate the nature, severity, and scope of the fire hazards associated with internal electrical failures.

78. Curtis failed to provide sufficient guidance regarding precautions necessary to reduce or avoid the risk of fire, including monitoring, placement, continued use, or discontinuation of the Product under hazardous conditions.

79. Adequate warnings and instructions were feasible and could have been provided at the time the Product was placed into the stream of commerce.

80. Had adequate warnings been provided, Plaintiffs' subrogors would have taken reasonable steps to avoid or mitigate the risk of fire, and the loss would not have occurred or would have been substantially reduced.

81. Curtis's failure to provide adequate warnings and instructions rendered the Mini-Fridge defective and unreasonably dangerous.

82. Curtis' failure to warn was a direct and proximate cause of the fire and the damages sustained by Berry, which damages were reimbursed by Plaintiff.

83. As a result of Curtis' failure to warn, Plaintiff is entitled to recover damages as permitted by law.

## COUNT VI – BREACH OF WARRANTY
***Curtis***

84. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 2 through 27 as if fully restated herein.

85. At all relevant times, Curtis was a merchant with respect to goods of the kind sold, including consumer refrigeration appliances such as the subject Mini-Fridge.

86. Curtis impliedly warranted that the Mini-Fridge was merchantable and fit for the ordinary purposes for which such goods are used, including safe operation as a consumer refrigeration appliance without posing an unreasonable risk of fire or property damage.

87. The Mini-Fridge breached the implied warranty of merchantability because it was not fit for its ordinary purpose, was not of fair average quality, was not adequately contained, packaged, or labeled, and was unsafe for ordinary and foreseeable use due to defects in its design, manufacture, electrical components, and/or warnings.

88. The Mini-Fridge failed to perform as an ordinary consumer would reasonably expect when used in a reasonably foreseeable manner.

89. The defective and unmerchantable condition of the Mini-Fridge existed at the time it left Curtis' possession and/or control.

90. Berry used the Mini-Fridge in a normal, intended, and foreseeable manner.

91. As a direct and proximate result of Curtis' breach of the implied warranty of merchantability, Plaintiff and Berry sustained the damages described herein.

92. At the time of sale and distribution, Curtis knew or had reason to know the particular purposes for which the Mini-Fridge was required, including use in a commercial office environment.

93. Curtis knew or had reason to know that Berry was relying on Curtis' skill and judgment to select and furnish a Mini-Fridge suitable and safe for that purpose.

94. The Mini-Fridge was not fit for the particular purpose for which it was required because it posed a risk of internal electrical failure and fire under normal and foreseeable use.

95. As a direct and proximate result of Curtis' breach of the implied warranty of fitness for a particular purpose, Plaintiff and Berry sustained the damages described herein.

96. Curtis made express warranties to Berry and to the consuming public through branding, labeling, advertising, product literature, packaging, instructions, and other representations regarding the quality, safety, and fitness of the Mini-Fridge.

97. Such express warranties included, but were not limited to, representations that the Mini-Fridge was safe, reliable, suitable for ordinary and foreseeable use, and compliant with applicable safety standards.

98. These representations formed part of the basis of the bargain and were relied upon by Plaintiffs' subrogors in purchasing and using the Mini-Fridge.

99. The Mini-Fridge failed to conform to those express warranties because it was defective and unreasonably dangerous and posed a fire hazard due to internal electrical failures.

100. As a direct and proximate result of Curtis' breach of express warranties, Plaintiff and Berry sustained the damages described herein.

101. Curtis received timely notice of the breach of warranties through, among other things, the occurrence of the fire, Plaintiff's claims, and recall-related safety actions and communications concerning Frigidaire-branded Mini-Fridges.

102. Plaintiff pleads in the alternative that privity of contract existed between Curtis and Berry by virtue of the sale and distribution of the Mini-Fridge through authorized retail channels, and/or that privity is not required under North Carolina law for Berry to maintain claims for breach of warranty against Curtis, including for property damage arising from a defective product.

103. Plaintiff further pleads in the alternative that Berry was an intended third-party beneficiary of the warranties made by Defendants concerning the Mini-Fridge. At the time the Mini-Fridge was designed, manufactured, distributed, and sold, Defendants knew or reasonably should have known that such products would be purchased for use in homes, offices, and

workplaces and would be used by or affect persons and property other than the immediate purchaser. Defendants intended and expected that the benefits of their warranties regarding the safety, quality, and fitness of the Mini-Fridge would extend to foreseeable users and entities whose property could be affected by the product, including Berry.

104. As a direct and proximate result of Curtis' breaches of warranty, Plaintiff is entitled to recover all damages permitted by law, including property damage, business interruption losses, mitigation costs, and other consequential and incidental damages.

WHEREFORE, Plaintiff prays this Court:

1. Enter a judgment in the amount of $909,456.23 against the Defendants;
2. Order interest as allowed by law;
3. For the costs of this action; and
4. For such other and further relief as this Court deems just and proper.

Respectfully submitted this 2nd day of September 2026.


BUTLER WEIHMULLER KATZ CRAIG LLP

*/s/ Zachary M. Jett*
Zachary M. Jett, Esq. (NC Bar No.: 40727)
Alexander J. Elmes, Esq. (NC Bar No.: 42808)
11525 N. Community House Road, Suite 300
Charlotte, North Carolina 28277
Telephone: (704) 543-2321
Facsimile: (704) 543-2324
zjett@butler.legal
aelmes@butler.legal
*Attorneys for Plaintiff*